357 So.2d 798 (1978)
STATE of Louisiana
v.
Frederick SMITH.
No. 60852.
Supreme Court of Louisiana.
April 10, 1978.
*799 Stuart R. Thomson, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was charged by bill of information with three offenses arising out of same criminal act: armed robbery, attempted aggravated rape and attempted second degree murder. He was tried by jury and found guilty of simple robbery, attempted aggravated rape and attempted second degree murder. The trial judge sentenced the defendant to serve two consecutive terms of twenty years imprisonment at hard labor for the attempted aggravated rape and the attempted second degree murder, and to serve five years imprisonment at hard labor for the simple robbery, the sentence to run concurrently with the two twenty year terms.
Evidence received at trial showed that on February 11, 1975 a young male entered a small Baton Rouge drugstore owned and operated by a seventy-six year old woman. The man grabbed the elderly lady, rifled through the cash register pocketing some forty to fifty dollars, then dragged the terrified woman to the rear of the store. There he tried unsuccessfully to rape the woman, and beat her severely with a bottle and a broomstick. The man then fled through the rear of the store, leaving his victim lying in a pool of blood. The woman managed to summon help and was soon taken to a local hospital. Six weeks later the defendant was arrested. One week after the arrest the defendant was identified in a line-up by the victim and by a witness who saw the man enter and leave the store at the time of the offense.

Assignment of Error No. 1A
The defendant contends that the trial court erred in denying a motion to quash the bill of information which was based in part on the ground that he was denied his constitutional right to a speedy trial.
The record shows the following chronology of events leading up to the defendant's trial and conviction:

 February 11, 1975 Offense committed
 March 24, 1975 Defendant arrested

*800
 March 25, 1975 Defendant was brought before
 a judge and counsel was
 appointed
 March 31, 1975 Defendant was identified in
 the line-up
 October 21, 1976 Bill of information filed
 against the defendant
 October 29, 1976 Court set arraignment for
 November 29, 1976
 November 29, 1976 Defendant appeared for arraignment,
 new counsel was
 appointed, and the arraignment
 was passed and reset
 for December 2, 1976
 December 2, 1976 Defendant appeared for arraignment,
 but his attorney
 failed to appear. Arraignment
 reset for January 6,
 1977
 December 27, 1976 Defendant files a pro se motion
 for the appointment of
 counsel and for a preliminary
 hearing
 January 6, 1977 Defendant appeared for arraignment.
 New counsel was
 appointed and arraignment
 was reset for January 13,
 1977
 January 13, 1977 Both the defendant and his
 attorney failed to appear for
 arraignment. Arraignment
 was passed and reset for
 January 21, 1977
 January 21, 1977 Defendant appeared in court
 with counsel, waived formal
 arraignment, and pleaded not
 guilty to all three charges.
 Trial set for April 18, 1977
 March 2, 1977 Defendant appeared in court
 for a preliminary hearing but
 his counsel failed to appear.
 The hearing was passed and
 reset for March 9, 1977
 March 9, 1977 Preliminary hearing passed
 and reset for March 30, 1977
 on court's motion
 March 30, 1977 Defendant and counsel appeared
 in court for a preliminary
 hearing. With the
 consent of defense counsel,
 the hearing was passed and
 reset for April 1, 1977
 April 1, 1977 Defendant and counsel appear
 for preliminary hearing.
 On motion of the State, with
 defense counsel's consent, the
 hearing was passed and reset
 for April 5, 1977
 April 5, 1977 Defendant and counsel appear
 for preliminary hearing.
 On motion of the State, with
 defense counsel's consent, the
 hearing was passed and reset
 for April 7, 1977
 April 7, 1977 Defendant and counsel appear
 for preliminary hearing.
 Evidence was taken and the
 court found probable cause
 to hold the defendant for
 trial for the attempted aggravated
 rape and the attempted
 second degree murder,
 but found no probable
 cause the armed robbery
 April 18, 1977 Trial passed and reset for
 April 19, 1977
 April 19, 1977 Trial passed and reset for
 April 26, 1977
 April 26, 1977 Motions heard. Trial commenced.

The fundamental right to a speedy trial under the Sixth Amendment of the United States Constitution and Art. 1, § 16 of the La.Const. of 1974 is engaged by the filing of ". . . a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a formal charge . . ." United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); State v. Fraise, 350 So.2d 154 (La. 1977); State v. Neyrey, 341 So.2d 319 (La. 1976).
In State v. Neyrey, supra, we set out the following test in reference to speedy trial: ". . . In determining whether this constitutional right has been violated, no fixed time period governs; rather, the conduct of both the prosecution and the defense are weighed in light of several factors: the length of the delay; the reason for the delay; the defendant's assertions of his rights; and the actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Bullock, 311 So.2d 242 (La.1975)." 341 So.2d at 325.
See also State v. Fraise, supra; State ex rel. Miller v. Craft, 337 So.2d 1191 (La. 1976).
In the present case a period of twenty-five months separated the defendant's arrest and trial. Aside from the delay of approximately three months caused by the failure of defense counsel to appear in court, it seems that the bulk of the delay (approximately twenty months) may be attributed to the failure of the district attorney *801 to file the bill of information against the defendant.
The record before us is not very clear about the cause for the delay in filing the bill against defendant. The trial judge indicated that defendant had other charges pending against him while in jail. We can glean from the record: that the policeman who arrested defendant for this offense was also looking for him for another reason; that defendant was brought into another section of court shortly after arrest, and had lawyers appointed to represent him on other charges; and that he appeared in the court where he was tried on a bench warrant issued on other cases pending against him.
There is no evidence of bad faith or deliberate delay on the part of the State. Some administrative confusion on the part of both the prosecutor's and the indigent defender's offices is suggested by the record. But the prosecutor had established a procedure to insure against a prisoner's becoming "lost" in the jail, and defendant was aware of it. A sheet of paper was available to prisoners on which they could check a box to communicate with their lawyer, the prosecutor or the court. Defendant referred to this as the "cop-out sheet," but he testified to no effort to communicate with anyone about this case, except the two "alibi witnesses." He apparently had regular visitors in jail throughout his incarceration.
Neither does it appear that the defendant suffered any substantial prejudice as a result of the delay. The only prejudice asserted by the defendant was the inability to locate two alibi witnesses, but one of the two testified at trial that she did not see defendant on the day of the offense, and the defendant admitted on cross-examination that he was not with the other at the time of the offense. In sum, it does not appear that the defendant was denied his right to a speedy trial. The trial court properly denied the motion to quash, and the assignment is without merit.

Assignment of Error No. 1B
Defendant contends that the trial court erred in denying a motion to quash alleging that the defendant had been denied effective assistance of counsel. The defendant argues that until the last attorneys were appointed he was effectively without counsel because none of those previously appointed contacted him or did anything to advance his defense.
Because we find that the only effect of the faulty representation prior to the appointment of defendant's present counsel was delay, and because we have determined that the defendant was not prejudiced by this delay, we cannot say that the trial court erred in denying the defendant's motion to quash raising these grounds.

Assignment of Error No. 1C
Defendant contends that the trial court erred in denying his motion to quash alleging that he had been arrested without probable cause and without a warrant. The lack of probable cause to arrest is not a ground for quashing a bill of information and is not, of itself, sufficient to void a subsequent conviction. See State v. Jenkins, 338 So.2d 276 (La.1976). Further, the defendant failed to argue both before the trial court and in brief before this court any illegality resulting from the arrest of the defendant which may be addressed on appeal. Accordingly we find that this assignment is without merit.

Assignment of Error No. 2A
Defendant contends that the trial court erred in failing to suppress the in-court and out-of-court identifications on grounds that the line-up identification was tainted by the denial of the defendant's right to be represented by counsel.
The State argues that the jurisprudence is well-established that a defendant need not be represented by counsel at a pre-indictment line-up, relying on Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 441 (1972); State v. Fields, 342 So.2d 624 (La.1977); State v. Hargrove, 330 So.2d 895 (La.1976); State v. Johnson, 327 So.2d 388 (La.1976). While the proposition *802 advanced by the State is most certainly too broad, it is safe to say that representation by counsel is not required in all cases of pre-indictment line-ups. In the present case the record shows that the Baton Rouge public defender's office was appointed to represent the defendant on the day after his arrest. On the day of the line-up, an assistant district attorney telephoned the public defender's office to inform them of the proposed line-up. The indigent defender's office responded that they would attend the line-up. Later in the day the assistant district attorney called again to confirm the presence of defendant's counsel at the line-up. This time the indigent defender's office told the assistant district attorney that they had decided not to attend the line-up. Under these circumstances, it is apparent that the State did all that was possible to insure the presence of defendant's appointed counsel.
There is no evidence that the line-up was unfair. Defendant, himself, was permitted to select the other prisoners who stood in the line-up, and selected persons he thought resembled him. The State should not be prevented from using evidence obtained through a line-up when that line-up was fairly conducted merely because the defendant's attorney decides not to attend and does not request that it be delayed. Accordingly, we hold that the defendant's right to counsel was not violated in the present case.

Assignment of Error No. 2B
Defendant contends that evidence of the line-up and identification should have been suppressed because of unduly suggestive procedures occurring before the actual line-up took place. Specifically, he argues that the identification was not reliable because the line-up took place fifty days after the offense was committed and because the witness who saw the defendant enter and leave the store was shown mug shots of the defendant at some time prior to the actual line-up.
This assignment is without merit. There is no showing in the record that the procedures used produced a substantial risk of misidentification, and, accordingly, the defendant's rights to due process were not violated. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, 353 So.2d 1005 (La.1977).

Assignment of Error No. 3
Through this assignment the defendant contends that the trial court erred in denying a motion for a mistrial made after the defendant was "surprised" by the testimony of a State witness. The assignment is clearly without merit. There is no ground for mistrial based on the surprise of the defendant concerning the testimony of State witnesses. See C.Cr.P. 770-775.

Assignment of Error No. 4
This assignment was taken to the overruling of an objection made to the following remarks in the State's closing argument:
"Does a person who has a witness at the time who can alibi for himJoyce Johnson, the way the story started, they were a group of them on the porch playing cards that afternoon, if you remember what Joyce Johnson said, there wasn't one, there was a group of them on the porch playing cards, that afternoon. If it had been the afternoon that he was there, there was a group. Now, had he been innocent of this crime and been with this group of people, he would have had well, how many in a group, fourmaybe five . . ."
The defendant argues that the remarks constitute reference to the failure of the defendant to produce alibi witnesses. We do not agree. It appears that the comment, when taken in context, is simply a reference to a lack of evidencepermissible argument under C.Cr.P. 774.

Assignment of Error No. 5
The defendant contends that the trial court erred in overruling his objection to the following question asked the victim of the offense by the State on direct examination:
*803 "Q. Did he have intercourse with you?"[1]
The defendant contends that this was a leading question. The record shows that the question was asked to clarify the witness' earlier statement that she had been raped. As such, it cannot be said to be a leading question, and no reversible error is shown. See State v. Sheppard, 350 So.2d 615 (La.1977).
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
NOTES
[1] Immediately before this question, the prosecutor had asked:

"Okay, now, he didn't actually have intercourse with you, did he?"
The defendant objected to the question as leading and the prosecutor rephrased it.