SAMUEL, Judge.
Plaintiff filed this suit for personal injuries, medical expenses and property damages resulting from an automobile accident. The matter was tried to a jury and judgment was rendered in favor of plaintiff in the sum of $27,691.[1] The defendant-insurer has stipulated liability, and on appeal contends only that the award for personal injuries is excessive.
Lay evidence relative to plaintiff’s injuries was given by plaintiff and his wife. The medical evidence was given by Dr. Em-met Guilliott, the original treating physician, and Dr. Kenneth Vogel, a treating neurosurgeon. The only other witness was the investigating police officer whose only testimony relative to the quantum issue before us was that upon his arrival at the scene of the accident he observed the heavy amount of damage to both vehicles and that the plaintiff was bleeding profusely from the facial area.
The lay testimony (other than the police officer) is to the following effect: The accident occurred on June 14, 1976 when the plaintiff vehicle was struck at the left front door with such force the vehicle was totally *688 demolished. Plaintiff hit his head on the steering wheel, cracking the wheel. He bled profusely, and was taken from the scene by ambulance to Charity Hospital where four stitches were taken in his head. He also injured his leg, back and neck. He was treated by Dr. Guilliott for about one month and then, when he did not improve, by Dr. Vogel. His neck and back problems improved, but his head continues to give him problems. After the accident he could not work because of the pain in his head. Plaintiff is 43 years old, attended school until fourth grade, did construction work, farm labor, and worked for a garbage disposal firm at the time of the accident. He was involved in another accident in November, 1976, but his head was not injured. Since the accident plaintiff has become forgetful, has dizzy spells and headaches, poor memory and is easily irritated. He is no longer able to engage in construction work, nor is he able to pick up and play with his children.
The medical evidence is as follows:
Dr. Guilliott testified: He saw plaintiff shortly after the accident, taking a medical history and performing a routine physical examination. His initial findings included a laceration of the forehead, abrasion of the left knee, marked right trapesius spasm and tenderness, marked paralumbar spasm of the low back and evidence from the straight leg raising test to indicate that the sciatic nerve was possibly stretched or herniated. He treated plaintiff on eight occasions until July 13, 1976 and recommended continued diathermy treatments. A neurologist was recommended because of plaintiff’s continued complaints of headaches.
Dr. Vogel testified: He saw plaintiff July 13, 1976 for evaluation of headaches. The history taken indicated plaintiff was in good health prior to this accident, but since striking his head on the steering wheel he has had continued headaches and insomnia. Neurological examination revealed mild muscle spasm of the cervical spine on the right, with mild loss of motion and mild limitation of motion in the lower extremities, and soreness in that area, with no spasms. Dr. Vogel diagnosed plaintiff’s injuries resulting from the accident as a grade 1 concussion, cervical and lumbar strain and laceration of the right forehead, which had healed, but was still visible. He concluded the frontal headaches and mild insomnia resulted from the concussion, and found that plaintiff had a bruise of the brain without permanent loss of function. Other injuries included acute (i. e. of recent origin) cervical and lumbosacral strain. X-rays of the skull were taken, an EEG performed and three weeks of physical therapy was recommended. The EEG was abnormal in the left temporal region, suggesting mild dysfunction compatible with head injury. When seen August 26, plaintiff continued to complain of headaches, dizziness and confusion, and mild pain in the neck and low back. A second EEG was performed, which showed evidence of healing. Plaintiff received 35 physical therapy treatments between July 23 and October 20, 1976. He was seen by the doctor on September 23 and November 2, 1976 and for the last time on September 14, 1978. At that time he still complained of occasional headaches and poor memory. Dr. Vogel stated that after a head injury normal symptomalogy usually lasts from three to six months. However, in a very small percent of cases (2%) they continue beyond that time. While this is uncommon, if the symptoms continue without any intervening head injury it is logical to conclude they result from the original injury.
QUANTUM
Having carefully read the record, we turn our attention to the primary question before our appellate court which is whether or not the judge or jury fixing the amount of the award has abused the great discretion vested in them by law.[2]
*689 As stated by our Supreme Court in Reck v. Stevens:[3]
. . before a Court of Appeal can disturb an award . . . the record must clearly reveal that the trier of fact abused its discretion . . .
If, as contended by appellant, plaintiff’s injuries lasted only four months, then the award would appear to be clearly excessive. However, in view of Dr. Vogel’s testimony, the jury apparently agreed that the continued dizziness and headaches, suffered by plaintiff for two years after the accident, resulted from the accident, and they could have believed, as testified by plaintiff and his wife, that it has adversely affected his ability to work. Thus, we cannot say that the triers of fact abused their very great discretion, and we will not disturb their award.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. $1,631 medical expense and damage to car, and $26,060 for pain and suffering.

. C.C. Art. 1934(3); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Coco v. Winston Industries, Inc., La., 341 So.2d 322; Reck v. Stevens, La., 373 So.2d 498.

. Supra, note 2.